IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **THE COALITION FOR FAIR TRADE IN CERAMIC TILE,**<br><br>        **Plaintiffs,**<br><br>    v.<br><br>**UNITED STATES,**<br><br>        **Defendant.** | Court No. 25-00095 |

## COMPLAINT

Plaintiff, the Coalition for Fair Trade in Ceramic Tile ("Plaintiff" or "the Coalition"), by and through its attorneys, alleges and states as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff brings this action to contest certain aspects of the final determination issued by the U.S. Department of Commerce ("Commerce") in its antidumping ("AD") investigation of ceramic tile from India. The final determination was published by Commerce in the Federal Register as *Ceramic Tile from India: Final Negative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 90 Fed. Reg. 17,030 (Dep't of Commerce, April 23, 2025) ("Final Determination"). The findings and conclusions of the contested determination are set forth in the accompanying *Issues and Decision Memorandum for the Final Negative Determination of Sales at Less-Than-Fair-Value in the Investigation of Ceramic Tile from India*, Inv. No. A-533-928 (Apr. 16, 2025) ("Issues and Decision Memorandum").

1

## JURISDICTION

2. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Section 516A of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(ii).

## STANDING

3. Plaintiff, the Coalition, is comprised on nine U.S. producers of the domestic like product. As such, Plaintiff is an interested party within the meaning of 19 U.S.C. § 1677(9)(F) and was the petitioner in the underlying proceeding. Additionally, the Coalition was an active participant in the investigation which led to the challenged final determination and accordingly has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THIS ACTION

4. Plaintiff commenced this action by filing the summons with the Court on May 23, 2025, which is within thirty days after the date of publication of the Final Determination on April 23, 2025, and in accordance with 19 U.S.C. § 1516a(2)(A).

5. This complaint is being filed within 30 days of the filing of the summons in this action as prescribed in 19 U.S.C. § 1516a(a)(2)(A) and in accordance with CIT Rs. 3(a)(2) and 6(a)(1)(C).

## STATEMENT OF FACTS

6. On April 19, 2024, the Coalition submitted an AD petition concerning unfairly traded imports of ceramic tile from India. The Coalition alleged, in part, that the domestic industry was materially injured by reason of dumped imports of ceramic tile from India. *See Ceramic Tile from India: Initiation of Less-Than-Fair-Value Investigation*, 89 Fed. Reg. 42,836 (Dep't of Commerce May 16, 2024) ("Initiation Notice"). On May 16, 2024, Commerce

published the notice initiating the antidumping duty investigation of ceramic tile from India. *See id.* The period of investigation ("POI") was from April 1, 2023 through March 31, 2024. *Id.*

7. On July 15, 2024, Commerce selected Antiqa Minerals ("Antiqa") and Win-Tel Ceramics Pvt. Ltd. ("Win-Tel") as the mandatory respondents in this investigation. *See* Commerce Memorandum, *Less-Than-Fair-Value Investigation of Ceramic Tile from India: Respondent Selection* (July 15, 2024) ("Respondent Selection Memo"). Commerce subsequently issued its Initial Questionnaires to both mandatory respondents.

8. Before filing initial questionnaire responses, Antiqa requested that it be allowed to exclude two companies, Antique Marbonite P. Ltd ("Marbonite") and Segam Tiles PVT Ltd ("Segam"), from its reporting to Commerce. Antiqa acknowledged that it is affiliated with these companies and that both companies are involved with either the production or the sale of subject merchandise.

9. On August 22, 2024, Commerce granted Antiqa's request for reporting exclusions regarding Marbonite and Segam before Antiqa filed any of its initial questionnaire responses and before Commerce made any affiliation and collapsing determinations on the record. On August 30, 2024, Plaintiff submitted comments opposing Commerce's decision to grant Antiqa's exclusion request of Marbonite and Segam as premature.

10. On August 29, 2024, Antiqa submitted its response to Section A of the Initial Questionnaire without information regarding two of its affiliated producers, Marbonite and Segam, pursuant to Commerce's granting of the exclusion request. Additionally, in its Section A response, Antiqa requested yet another exclusion for another affiliate, Affiliate A.[1]

---

[1] The name of this affiliated company is treated as business proprietary information in the underlying administrative record. Therefore, for purposes of this complaint, we refer to this affiliate as "Affiliate A."

11. On August 29, 2024, Win-Tel submitted its response to Section A of the Initial questionnaire on behalf of itself, Theos Tiles LLP ("Theos") and Neelson Porselano LLP ("Neelson").

12. On September 11, 2024, Commerce rejected Antiqa's reporting exclusion request for its third affiliate, Affiliate A. Commerce reasoned that it was still reviewing Antiqa's affiliation information, and therefore, affiliation and collapsing determinations will not be made until it "more thoroughly" reviews Antiqa's affiliation information.

13. Throughout the course of the investigation, Commerce continued to receive initial questionnaire responses from both mandatory respondents, Antiqa and Win-Tel. Both respondents reported affiliations with other companies involved in the sale and/or production of ceramic tile and inputs used in the production of ceramic tile.

14. In comments, Plaintiff identified various deficiencies in the mandatory respondents' initial questionnaire responses, including, among other things, concerns with reported affiliations, home market sales, U.S. sales, and reported costs of production.

15. Commerce issued additional rounds of supplemental questionnaires to the mandatory respondents, and the mandatory respondents subsequently filed supplemental questionnaire responses.

16. On December 2, 2024, Commerce published its preliminary determination in the antidumping duty investigation finding a 0.00 percent dumping margin for both mandatory respondents. *See Ceramic Tile from India: Preliminary Negative Determination of Sales at Less Than Fair Value and Postponement of Final Determination*, 89 Fed. Reg. 95,182 (Dep't of Commerce Dec. 2, 2024) ("Preliminary Determination") and accompanying Preliminary Decision Memorandum (November 22, 2024).

17. In its preliminary determination, Commerce determined that Win-Tel is affiliated with Theos based on common ownership, and that the two companies should be treated as a single entity. However, Commerce also determined that Win-Tel and Neelson are not affiliated because neither share any ownership, production, or facilities. *See* Preliminary Decision Memorandum at 5.

18. With respect to Antiqa, Commerce preliminarily determined that Antiqa is affiliated with Antiqa Ceramic Pvt. Ltd. ("ACPL"), Shivam Enterprises ("Shivam"), Antiek Vitrified LLP ("AVL"), Antique Non Woven Pvt. Ltd. ("ANPL"), Antique Marbonite Pvt. Ltd ("Marbonite"), Segam Tiles Pvt. Ltd. ("Segam"), and Affiliate A. Nonetheless, Commerce determined not to collapse Antiqa with Marbonite, Segam, or Affiliate A. *See* Preliminary Decision Memo at 5; *see also* Commerce Memorandum, *Ceramic Tile from India Less-Than-Fair-Value Investigation: Antiqa Minerals Preliminary Affiliation and Collapsing Memorandum* (November 22, 2024).

19. In its preliminary determination, Commerce indicated that pursuant 19 U.S.C. § 1677m(i)(1) it "intends to verify the information relied upon in making its final determination for Antiqa Group and Win-Tel Group." *See* Preliminary Determination, 89 Fed. Reg. at 95,183.

20. Commerce subsequently conducted sales and cost verifications of Antiqa and Win-Tel. *See* Issues and Decision Memorandum at 2.

21. Commerce released sales and cost verification reports for Antiqa on March 14, 2025 and March 18, 2025, respectively. *See* Commerce Memorandum, *Less-Than-Fair-Value Investigation of Ceramic Tile from India: Sales Verification Report for Antiqa Minerals* (March 14, 2025) ("Antiqa Sales Verification Report); *see also* Commerce Memorandum, *Verification of the Cost Responses of Antiqa Minerals in the Less-Than-Fair-Value Investigation*

*of Ceramic Tile from India* (March 18, 2025) ("Antiqa Cost Verification Report").

22. Commerce also released cost and sales verification reports for Win-Tel on February 21, 2025 and March 14, 2025, respectively. *See* Commerce Memorandum, *Verification of the Cost Response of Win-Tel Ceramics Private Limited in the Less-Than-Fair-Value Investigation of Ceramic Tiles from India* (February 21, 2025) ("Win-Tel Cost Verification Report"); *see also* Commerce Memorandum, *Less than Fair Value Investigation of Ceramic Tile from India: Verification of the Sales Response of Win-Tel Ceramics Private Limited in the* (March 14, 2025) ("Win-Tel Sales Verification Report").

23. On March 26, 2025, Plaintiff submitted a timely case brief with Commerce requesting that changes be made to certain aspects of the *Preliminary Determination*. On April 1, 2025, Antiqa and Win-Tel submitted a joint rebuttal brief.

24. On March 27, 2025, after the time to file case briefs in the proceeding had passed, Commerce issued a request for Antiqa to submit revised sales databases. *See* Commerce Letter, *Less-Than-Fair-Value Investigation of Ceramic Tile from India: Request for Revised Sales Databases* (March 27, 2026).

25. By relying on, among other things, sales and cost information submitted by the mandatory respondents during and after verification, Commerce issued its final decision memorandum on April 16, 2025. *See* Issues and Decision Memorandum.

26. In the final determination, Commerce explained that it "accepted the minor corrections that Antiqa and Win-Tel presented at verification" and "used the updated comparison market and U.S. sales databases that the respondents provided, for purposes of calculating the margins for this final determination." *See* Issues and Decision Memorandum at 4.

27. Commerce continued to determine that Win-Tel and Neelson are not affiliated. *See id.* at 12-14.  Commerce also determined not to collapse Marbonite and Segam with Antiqa. *Id.* at 18-22.

28. Commerce published the final negative determination on ceramic tile from India on April 23, 2025.  In the *Final Determination* and the supporting memoranda, Commerce calculated a 0.00 percent dumping margin for both Antiqa and Win-Tel.  *See Final Determination*, 90 Fed. Reg. 17,030.

## CLAIMS

### Claim 1

29. Paragraphs 1 through 28 are incorporated herein by reference.

30. Commerce practice is to collapse related entities and treat them as one entity, resulting in the calculation of a single weighted-average dumping margin for the collapsed entity. The collapsing practice is meant to ensure that Commerce reviews the entire producer or exporter, not merely a part of it, and prevents affiliated entities from circumventing antidumping duties by channeling production of subject merchandise through the affiliate with the lowest potential dumping margin.

31. The authority to collapse entities arises out of Commerce's "responsibility to prevent circumvention of the antidumping law."  *See Prosperity Tieh Enter. Co. v. United States*, 965 F.3d 1320, 1323 (Fed. Cir. 2020).

32. Insofar as Commerce prematurely excluded Antiqa from reporting relevant information regarding affiliated entities Marbonite and Segam, Commerce abused its discretion when it unlawfully departed from its practice of requiring companies to initially report information requested from all affiliated producers and sellers of merchandise under

investigation before granting reporting exclusions. The arbitrary nature of Commerce's decision regarding Marbonite and Segam is further evidenced by the rejection of a separate and subsequent reporting exclusion request for Affiliate A because "{f}inal affiliation and collapsing determinations {would} not be made until {it} more thoroughly reviewed Antiqa's affiliation information."

### Claim 2

33. Paragraphs 1 through 32 are incorporated herein by reference.

34. Additionally, even considering the limited evidence available on the record of the proceedings, Commerce did not properly conduct the collapsing analysis and erred in its decision to not collapse Marbonite and Segam with the Antiqa entity. Thus, Commerce's collapsing analysis is not supported by substantial evidence and is otherwise not in accordance with law.

### Claim 3

35. Paragraphs 1 through 34 are incorporated herein by reference.

36. Commerce's non-affiliation determination regarding Win-Tel and its input supplier, Neelson, was also not supported by substantial evidence and is otherwise not in accordance with law.

### Claim 4

37. Paragraphs 1 through 36 are incorporated herein by reference.

38. Commerce's established practice has consistently been that verification is not an opportunity for submission of new factual information. *See e.g., Goodluck India Limited v. United States*, 11 F.4th 1335 (Fed. Cir. 2021).

39. When Commerce discovers new and previously undisclosed factual information at verification, Commerce practice is to reject that new factual information and to apply adverse

inferences if the information should have been provided previously. Insofar as Commerce accepted new factual information from Antiqa and Win-Tel during and after verification that was methodological in nature, Commerce unreasonably departed from its established practice, rendering its decision unlawful.

40. Additionally, to the extent that Commerce requested additional information be placed on the record of the proceeding after verification had concluded, and after the opportunity for Plaintiff to comment on such information had passed, Commerce acted unlawfully. 19 U.S.C. § 1677m(i) requires that Commerce "shall verify *all* information relied upon in making – a final determination in an investigation." Thus, even accepting that Commerce is allowed to select which parts of the record it wishes to inspect during verification, it is not however permitted from relying on information that was not subject to verification because it had not yet been placed on the record of the proceeding when making a final determination in an investigation.

## Claim 5

41. Paragraphs 1 through 40 are incorporated herein by reference.

42. Commerce practice has been to allow for a scrap offset only when the respondent provides the necessary evidence linking scrap sold with the scrap generated from the production of subject merchandise during the relevant period. *See American Tubular Products, LLC v. United States*, 847 F.3d 1354, 1360-61 (Fed. Cir. 2017).

43. Insofar as Commerce granted Win-Tel a scrap offset when the verification report indicated that Win-Tel does not track generation of scrap in the normal course of business, then such a decision is unsupported by substantial evidence and otherwise not in accordance with law.

## **REQUEST FOR JUDGMENT AND RELIEF**

44.     WHEREFORE, Plaintiff respectfully requests that this Court:

45.     Hold that the portions of Commerce's *Final Determination* that are complained of above are not supported by substantial evidence and are otherwise not in accordance with law;

46.     Remand this matter to Commerce for disposition consistent with the final opinion and order of the Court; and

47.     Grant such further relief as this Court deems just and proper.

                                              Respectfully submitted,

                                              David M. Spooner, Esq.
                                              Christine J. Sohar Henter, Esq.
                                              Hendricks Valenzuela, Esq.

                                              BARNES & THORNBURG LLP
                                              555 12th St. NW, Suite 1200
                                              Washington, D.C. 20004
                                              (202) 371-6377

                                              *Counsel to Plaintiff*
                                              *The Coalition for Fair Trade in Ceramic Tile*

## **CERTIFICATE OF SERVICE**

PUBLIC SERVICE

*Coalition for Fair Trade in Ceramic Tile v. United States*
**Court No.: 25-00095**

I, David M. Spooner, certify that I served a copy of this public Complaint in the above-titled matter on the following parties, via certified mail or registered mail, return receipt requested, on June 23, 2025.

Supervising Attorney
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

Representative of Win-Tel Ceramics Pvt. Ltd. and Antiqa Minerals
Dharmendra N Choudhary, Esq.
GRUNFELD DESIDERIO LEBOWITZ SILVERMAN KLESTADT, LLP
1201 New York Ave., NW
Suite 650
Washington, DC 20005
dchoudhary@gdlsk.com

Robert Heilferty
Office of the Chief Counsel for
Trade Enforcement and Compliance
International Trade Administration
U.S. Department of Commerce
1401 Constitution Ave., NW
Washington, DC 20230

Representative of Lioli Ceramica Pvt Ltd.
Jonathan Zielinski, Esq.
CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Ave, NW
Suite 300
Washington, DC 20006
jzielinski@cassidylevy.com

Representative of M S International, Inc. and Bedrosians Tile and Stone
Jared Wessel, Esq.
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Jared.Wessel@hoganlovells.com

Representative of Simpolo Vitrified Private Limited ("Simpolo") and Nexion Surfaces Private Limited ("Nexion")
Brittney Powell, Esq.
FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, D.C. 20006
bpowell@foxrothschild.com

/s/ David M. Spooner
David M. Spooner
*Counsel to Plaintiff*
*The Coalition for Fair Trade in Ceramic Tile*